[No. 7262.  Decided April 2, 1908.]

THE STATE OF WASHINGTON, *on the Relation of Chester Thompson, Plaintiff*, v. W. H. SNELL, *as Judge of the Superior Court for Pierce County, Respondent*.[1]

INSANE PERSONS—CONFINEMENT OF INSANE CRIMINALS—DISCHARGE —PROCEEDINGS—NOTICE OF APPLICATION—FORUM. Where, on change of venue to another county, a person is tried and acquitted of crime on the ground of insanity and adjudged to be unsafe to be at large, it is thé duty of the prosecuting attorney of the county in which the commitment was made to resist an application for his release, within Laws 1907, p. 33, § 6, providing for service of the application, in view of other provisions making the committing court the proper forum and such attorney the proper resisting officer in kindred proceedings; hence service of the application need not be made upon the prosecuting attorney of the county wherein the information was filed.

SAME—PARTIES ENTITLED TO DISCHARGE—SCOPE OF ACT. Laws 1907, p. 33, relating to the confinement of the criminal insane, is not restricted to persons committed thereunder according to the terms of section 6, in view of section 9 extending its provisions to all criminal insane "now confined in the state hospitals for the insane" or in the penitentiary; hence the provisions for discharge from custody may be taken advantage of by one tried and committed before the act went into effect, and whether actually confined at that time or not; since when committed he was constructively confined, and since the act was intended to apply to all criminal insane, regardless of the time of their commitment or confinement.

SAME—CONSTITUTIONAL LAW—EX POST FACTO LAWS—REMEDIES NOT PENAL. The requirement that the criminal insane shall obtain a certificate from the physician and permit from the warden of the penitentiary before making application for release is not unconstitutional as an *ex post facto* law, and invalid because imposing burdens that did not exist at the time of the commitment; since such laws are not penal and merely affect modes of procedure, to which the term *ex post facto* has no application.

SAME—WHO MAY OBJECT TO. The state cannot urge the unconstitutionality of laws as being *ex post facto*, where the party elects to submit to the additional burdens imposed upon him thereby; as objection can only be made upon resistance to the law.

[1]Reported in 94 Pac. 926.

Application filed in the supreme court March 17, 1908, for a writ of mandate requiring the superior court for Pierce county, Snell, J., to set for hearing a petition praying for the discharge from custody of a defendant acquitted of the charge of murder on the ground of insanity.   Writ granted.

*Will H. Thompson*, for plaintiff.
*Harry G. Rowland*, for respondent.

RUDKIN, J.—On the 7th day of July, 1906, the relator, Chester Thompson, killed George Meade Emory in the city of Seattle, and by reason thereof was informed against in the superior court of King county for the crime of murder.   A plea of not guilty was interposed, and the place of trial was changed to the superior court of Pierce county.   The relator was tried in the latter court before the respondent as presiding judge, and the jury returned a verdict of not guilty by reason of insanity.   On the 3d day of May, 1907, the respondent entered an order reciting that the relator was then insane; that he had been acquitted of the crime of murder by reason of insanity; that his discharge or going at large would be manifestly dangerous to the peace and safety of the community; and committed him to the county jail of Pierce county.   It was further ordered that, on the 12th day of June, 1907, the relator should be taken from the county jail of Pierce county and transferred to the state penitentiary at Walla Walla, to be there confined in the ward set apart for the confinement, custody, and keeping of the criminal insane until the further order of the court and until discharged therefrom by due process of law.   The relator was committed to the county jail and thereafter transferred to the insane ward of the penitentiary in obedience to this order, and is now confined in the latter institution.   On the 19th day of February, 1908, he applied to the physician in charge of the criminal insane at the state penitentiary for an examination of his mental condition and fitness to be at large, as provided in § 6 of the act of February 21, 1907, entitled, "An act re-

.lating to the criminal insane, their trial, commitment, and custody." Laws of 1907, page 33. After such examination, the physician certified to the warden of the penitentiary that he had reasonable cause to believe that the relator had become sane since his commitment, and was a safe person to be at large. The warden thereupon granted the relator permission to present a petition to the court that committed him, setting up the facts leading to his commitment, and that he had become sane and mentally responsible, and in such condition that he is a safe person to be at large, and praying for his discharge from custody. A petition in due form was thereupon presented to the respondent judge, after service thereof upon the prosecuting attorney of Pierce county, but the respondent refused to set the matter down for hearing or to entertain jurisdiction of the proceeding, for two reasons; (1) because no notice of the application was served on the prosecuting attorney of King county; and (2) because the relator was tried, acquitted, and committed to the penitentiary before the act of February 21, *supra*, became a law, and for that reason was not entitled to avail himself of the provisions thereof. Application was thereupon made to this court for a writ of mandamus, requiring the respondent to set the petition down for hearing, and the case is now before us on the return to the alternative writ.

The objections urged against the issuance of the writ are the two assigned by the learned judge of the court below, and the further objection that the act in question is unconstitutional as applied to the relator's case. The first objection relates to the service of the application for a discharge on the prosecuting attorney of Pierce county. Section 6 of the act provides that the petition shall be presented to the court that committed the insane person, and "shall be served on the prosecuting attorney of the county, whose duty it shall be to resist the application." It seems manifest to us that the service was properly made on the prosecuting attorney of the county in which the application was made. The proceeding

for a discharge is in no manner dependent upon the proceeding in the original case. It was for the legislature to designate the court in which the proceeding should be instituted and the officer who would resist the application on the part of the state. The legislature designated the committing court as the proper forum, and the prosecuting attorney of that county as the proper officer to defend. The phrase "whose duty it shall be to resist the application" was evidently employed to impose a duty on the prosecuting attorney, and not to designate the officer who should be served or resist the application. Such is the natural construction of the language used, and this view is fortified by other provisions of the act. Thus, § 7 provides that:

"Should any criminally insane person discharged hereunder again become insane or mentally irresponsible, or be found to be an unsafe person to be at large because of mental unsoundness, *the prosecuting attorney of the county from which he was committed* may file a petition in the name of the State, setting up the facts leading to his commitment and subsequent discharge, and the relapse which is the basis of the petition."

Section 10 provides that:

"*The prosecuting attorney of any county wherein a person may have been acquitted of a crime* because of his insanity or mental irresponsibility may cause any such person who is not in custody to be brought before the superior court of that county for trial as to the question of his sanity or mental responsibility by filing a petition in the name of the state setting up the commission of a crime by such person, his acquittal thereof because of his insanity, and his insanity or mental irresponsibility at the present time."

From all these provisions it is apparent that the prosecuting attorney of the county in which the hearing is had shall be served and must resist the application.

Nor do we think that the second objection is tenable. While § 6 of the act is by its terms limited to persons committed thereunder, yet § 9 provides that:

"All the criminal insane now confined in the state hospitals

for the insane shall be forthwith sent by the authorities of those hospitals to the state penitentiary, and placed in the control of the warden and confined by him in the ward or department for the criminal insane, herein provided for, and shall not thereafter be discharged from his custody save in the manner herein provided. Any criminally insane person now confined in the state penitentiary shall be transferred to the ward for the criminally insane, and shall not be discharged, save as herein provided."

Whether the relator was confined in the penitentiary at the time the act took effect we need not inquire. He had been committed to that institution, and was there constructively, at least. Furthermore, we are satisfied from all the provisions of the act that it was intended to apply to all the criminal insane of the state, regardless of the time of their commitment or the place of detention.

The last objection is that the act is unconstitutional as applied to the relator, because it imposes burdens upon him which did not exist at the time of his commitment, such as the requirement that he must obtain a certificate from the physician in charge of the penitentiary and a permit from the warden. This objection is not well taken. The term *ex post facto* law, as used in the constitution, is confined to laws respecting criminal punishment, and has no relation to retrospective legislation of any other description. Cooley, Const. Lim. (6th ed.), p. 318. Laws providing for the commitment, detention, and discharge of the insane are not penal in any sense of the word, and the term *ex post facto* laws has no application to laws which merely affect or change modes of procedure. The requirement that an insane person must obtain a certificate from a certain physician and a permit from the warden of the penitentiary before he can apply to a court of justice for his discharge may be unconstitutional as to any and all persons affected by it, but that question is not before us, and we express no opinion upon it. If the relator elects to submit to these additional burdens imposed upon him,

it is not for the state to interpose the objection that the burdens are wrongfully or illegally imposed.

"*Prima facie,* and upon the face of the act itself, nothing will generally appear to show that the act is not valid; and it is only when some person attempts to resist its operation and calls in the aid of the judicial power, to pronounce it void, as to him, his property, or his rights, that the objection of unconstitutionality can be presented and sustained.   Respect for the legislature, therefore, concurs with well-established principles of law, in the conclusion, that such an act is not void, but voidable only; and it follows as a necessary legal inference from this position, that this ground of avoidance can be taken advantage of by those only who have a right to question the validity of the act, and not by strangers.   To this extent only it is necessary to go, in order to secure and protect the rights of all persons against the unwarranted exercise of the legislative power, and to this extent only, therefore, are courts of justice called on to interpose."   *Wellington et al., Petitioners,* 16 Pick. 87, 26 Am. Dec. 631.

See, also, Cooley, Const. Lim. (6th ed.), p. 196.

We are of opinion, therefore, that the procedure adopted by the relator is in conformity with the law, and the writ will issue as prayed.

Hadley, C. J., Dunbar, Fullerton, Crow, Root, and Mount, JJ., concur.